IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IVETTE PANIAGUA,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE BARNHART, COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil No. 05-2296 (PG) |

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

Plaintiff Ivette Paniagua (hereafter "Paniagua") filed this federal complaint seeking judicial review of the decision of the defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying her application for entitlement to a closed period of disability and ensuing benefits. (Docket No. 1). Paniagua requested in the Complaint and through her Memorandum of Law and Statement of the Case the decision of the Commissioner of Social Security be revoked and in the alternative the case be remanded to the Commissioner for further proceedings in which a vocational and/or medical expert be present to testify (Docket No. 15). [1]

The Commissioner answered the complaint, filed copy of the administrative record and a memorandum of law in support of the Commissioner's decision (Docket Nos. 9, 10, 11). The

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
  "... [t]he court shall have power to enter, upon the pleadings and transcript
   of the record, a judgment without remanding the cause for rehearing". Section 205(g).

Court referred the above motions to this Magistrate-Judge for report and recommendation (Docket No. 4).

After a perusal of the administrative record, defendant's brief, counsel for plaintiff's memorandum of law, as well as the administrative record containing the medical evidence on file, with the copy of the administrative hearing transcript filed thereafter, this United States Magistrate Judge finds the Commissioner's decision is supported by substantial evidence and should be **AFFIRMED.**

## GENERAL BACKGROUND

Paniagua was twenty nine years old (29) year-old female with high school education and past work experience as a security guard and cashier. She had also worked as truck driver, industrial machine operator and warehouse attendant. She claimed in the administrative application for disability benefits inability to work since March 13, 2001, due to a work related accident where she suffered neck and back sprain that irradiated to her legs, arms and hands.

Paniagua's initial application for benefits was denied and on her second application the Administrative Law Judge ("ALJ") considered the case de novo on September 20, 2005 and denied disability. The Appeals Council thereafter denied review of the ALJ's decision. Paniagua now seeks judicial review of the final decision of the Commissioner.

## PROCEDURAL HISTORY AND THE ADMINISTRATIVE HEARING

Paniagua's application for social security disability benefits was denied initially and upon reconsideration by the Social Security Administration. After the request for a hearing was

granted, Paniagua's application was entertained on April 4, 2005, with the testimony of the plaintiff while assisted by attorney Melba Rivera Camacho. (*Tr. pp. 25-42*).

Thereafter, the presiding ALJ Gregui J. Mercado, issued an opinion on September 20, 2005, finding Paniagua was not under disability since she retained the ability to perform the full range of light kind of work. This administrative decision was affirmed by the Appeals Council, and became the final decision of the Commissioner of Social Security that is now subject of this judicial review (*Tr. pp. 17-23*).

## THE ALJ'S DECISION AND THE APPEALS COUNCIL

In the opinion of September 20, 2005, the ALJ applied the evaluation process mandated by law, insofar as concluding that plaintiff:

(1) meets the non-disability requirements for a period of disability and disability insurance benefits for the closed period of March 13, 2001 to May 1, 2004;

(2) has not engaged in substantial gainful activity since the alleged onset date of disability up until she returned to work and engaged in substantial gainful activity by May 1, 2004;

(3) has an impairment or a combination of impairments considered "severe", that is, lumbar strain and muscle spasm and lesion at L5-S1 level, but not severe enough to meet or medically equal, either singly or in combination to one of the impairments in the Listing of Impairments, since pursuant to the Regulations found at 20 C.F.R. § 404.1520(b), the medically determinable impairment does

not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

In the ALJ's opinion, he reviewed and discussed the medical evidence wherein it was determined that plaintiff's above conditions indicated she felt pain on her lower back that radiated to the right lower extremity. She held a diagnosis of L5 right radiculopathy. *Tr. p. 19*. An orthopedic surgeon who evaluated the patient on October 26, 2001, reported full range of motion of the neck and no evidence therein of paravertebral muscle spasm. Dr. Carlos Grovas ("Dr. Grovas") also found straightening of the normal physiologic lumbar curvature of the back, which evidences paravertebral muscle spasm. Dr. Grovas found Paniagua could not return to her pre-injury work and had not achieved the maximum medical improvement and should be referred to pain clinic for epidural steroid infiltration with ten more sessions of physical therapy. However, Paniagua did not avail herself of the services at the pain clinic. *Id.*

A magnetic resonance image test performed on February 5, 2005 revealed straightening of physiologic lumbar lordosis compatible with muscle spasm and lumbar myositis and minimal lumbar dextroscoliotic tilt. There was circumferential disc bulge at L1-L2 flattening of the anterior thecal sact. The L4-L5 showed mild circumferential disc bulge flattening of the anterior thecal sact and minimally encroaching the intervertebral foramina. A nerve conduction study of February 28, 2005 also showed all sensory and motor nerves tested had adequate latencies, amplitudes and velocities. *Id*. The diagnosis was lumbosacral polyradiculopathy. *(Tr. p. 20).*

The ALJ finally determined Paniagua could not perform her past relevant work as a cashier which required medium level of exertion. However, the ALJ found the record allowed

for the residual functional capacity for the full significant range of light work because Paniagua's non-exertional limitations were not established in the record nor required any treatment. As such, the ALJ found Paniagua not under disability *(Tr. pp. 22-23)*.

## ANALYSIS

**A.   LEGAL STANDARD**

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence.  Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act.  *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987).  It is well settled law that a claimant is disabled under the Act if [s]he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).  A claimant is unable to engage in any substantial gainful activity when the

claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. §§ 404.1520(b). If he is not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520©. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively

presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. §§ 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f).

The claimant has the burden, under steps one through four, of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Serv., 944 F.2d 1, 5 (1st Cir. 1991).

In the instant case, the ALJ concluded, at step five of the evaluation process, Paniagua was not under disability since, although unable to perform her past relevant work, she could perform the full range of light work and there were jobs which existed within such residual functional capacity, further considering her education and young age. *(Tr. p. 24)*.

Paniagua claims in the Memorandum of Law and Statement of the Case there is no substantial evidence to support the determinations of the ALJ since he did not address appropriately her subjective allegations of pain. *(Docket No. 11; plaintiff's motion pp 6-7)*. Paniagua also claims the ALJ totally disregarded her allegations of a nervous disorder with all its non-exertional limitations since a treating physician Dr. Cobian had referred the patient to a psychiatrist. *Id. p. 9; Tr. p. 267*.

## B.  CONCLUSIONS OF LAW

First, the First Circuit has previously discussed in numerous opinions the ALJ is "not required to recite every piece of evidence that favored appellant." *See* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d)("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

A succinct discussion of the available medical evidence in the record shows Paniagua, who was born in 1972 and completed high school education, worked as a cashier and a security guard and suffered a work related accident when moving some furniture in March 13, 2001.  Paniagua was evaluated on March 15, 2001 and returned to work on March 19, 2001, being advised not to lift heavy objects.  She was diagnosed with L5 right radiculopathy as verified by a high resolution MRI in May 7, 2001.  *Tr. pp. 187-188.*  Paniagua continued treatment and physical therapy at the Carolina Physiatrics Center.  *Id. pp. 205-256.*[2]

At a consultative orthopedic evaluation in October 26, 2001, Paniagua was evaluated by Dr. Grovas, an orthopedic surgeon.  Dr. Grovas found full range of motion in the neck

---

[2] Plaintiff attempted to work for a few months in 2002 and 2003 and was given credit for two months and a half.  She also started working since May 2004 up to the date of the administrative hearing.  *Tr. pp. 32-34.*

without evidence of paravertebral muscle spasm. There was muscle spasm in the back, with flexion of 40 degrees; extension 20 degrees on the right and left; straight leg raising was positive on the right at 30 degrees and was negative on the left. The neurological evaluation revealed physiological deep tendon reflexes and no abnormal reflexes. Paniagua was diagnosed with herniated nucleus pulposus at L5-S1 and right L5 radiculopathy. *Tr. pp. 316-322.*[3]

A perusal of progress notes of Dr. Luis Anibal Soto López from the Centro Fisiátrico Carolina shows a two sentence referral dated May 17, 2001, indicating the patient complained of much anxiety and depressed mood. *Tr. p. 267.* Nowhere in the medical record is there evidence of psychological or psychiatric treatment or evaluation for which the ALJ did not consider Paniagua's non-exertional condition.

An MRI study of the lumbosacral spine dated February 8, 2005 indicates there is straightening of physiologic lumbar lordosis compatible with muscle spasm and/or lumbar myositis. The vertebral heights and disc spaces were well preserved, without fracture and no spondylolysis or spondylolisthesis. Minimal lumbar levoscoliotic tilt and normal pedicles and spinous processes. *Tr. p. 309.* A nerve conduction study of February 28, 2005 showed all sensory and motor nerves tested had adequate latencies, amplitude and velocities. The diagnosis was of lumbosacral polyradiculpathy. *Id. p. 262.*

Insofar as pain, the ALJ considered Paniagua's complaints but found them not credible to the degree alleged. *Tr. p. 20.* Considering that Paniagua had previously been referred to

---

[3] Defendant's memorandum submit that Dr. Grovas' findings and conclusions support the ALJ's determination that although plaintiff could not return to her former type of work, she could perform light work activity. *Docket No.11, p. 6.*

Ivette Paniagua v. Commissioner of S.S.
Report and Recommendation
Civil No. 05-2296(PG)
Page No. 10

a pain clinic but failed to avail herself of such services, the oral medications taken and the absence of medical findings for a condition that would cause the alleged degree of pain, the ALJ's opinion falls within the credibility determinations allowed for ALJ as a trier of fact. "Weight is given the administrative law judge's determinations of credibility for the obvious reason that he or she 'sees the witnesses and hears them testify, while the ... reviewing court look[s] only at [the] cold record[ ].' " *See* NLRB v. Walton Mfg. Co., 369 U.S. 404, 408, 82 S.Ct. 853, 855 (1962); Becker v. Secretary of Health and Human Services, 895 F.2d 34 (1st Cir. 1990).

Considering the medical evidence presented in the record as a whole the ALJ found Paniagua's complaints of disabling pain not fully credible. *See* De Rosa v. Secretary of Health & Human Serv., 803 F.2d at 26. This conclusion, when supported by specific findings, is entitled to deference. *See* Frustaglia v. Secretary of Health & Human Serv., 829 F.2d 192, 195 (1st Cir. 1987).[4]

Finally, the ALJ's opinion, as affirmed by the Appeals' Council, found Paniagua retained the capacity to perform light work activity and she had no significant non-exertional impairment. Thus, the ALJ applied the GRID and concluded she was not disabled. As in Ortiz v. Secretary of Health & Human Serv., 890 F.2d 520 (1st Cir. 1989) and Borrero Lebrón v.

---

[4] The evidence fails to show a medically determinable impairment which can reasonably be expected to produce the pain alleged. *See* Avery v. Secretary of Health and Human Services, 797 F.2d 19, 21 (1st Cir.1986); Rafael Rico v. Secretary of Health, Education and Welfare, 593 F.2d 431, 433 (1st Cir. 1979); 20 C.F.R. § 416.929.

Ivette Paniagua v. Commissioner of S.S.
Report and Recommendation
Civil No. 05-2296(PG)
Page No. 11

Secretary of Health & Human Serv., 747 F.2d 818 (1st Cir. 1984), when non-exertional limitations are found to impose no significant restriction on the range of work a claimant is exertionally able to perform, the ALJ's reliance on the GRID remains appropriate.[5]

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[6] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). *See* Rodríguez v. Secretary of Health & Human Serv., 647 F.2d 218, 222 (1st Cir. 1981).

In the instant case, the decision of the Commissioner, adopting the findings of the ALJ, is supported by pertinent substantial evidence in the record as a whole.

---

[5] *See, e.g.,* Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir. 1988); Rodriguez Pagan v. Secretary of Health and Human Services, 819 F.2d 1, 3-4 (1st Cir. 1987).

[6] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having scrutinized the record and completed an assessment of the evidence in the record as a whole, finds that the decision of the ALJ is supported by substantial evidence. Therefore, it is recommended that the Commissioner's decision **BE AFFIRMED.**

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order.  Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).  *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

At San Juan, Puerto Rico, on this 4th day of September of 2007.

                                              **S/CAMILLE L. VELEZ-RIVE
                                              CAMILLE L. VELEZ RIVE
                                              UNITED   STATES   MAGISTRATE   JUDGE**